**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

CARLOS ALFREDO MARTINEZ,

                Petitioner,

vs.

EMILY FRANCES MARTINEZ,

                Respondent,

**No. 25-1375**

VERIFIED PETITION FOR RETURN OF CHILD TO JAPAN

*No Mandatory Form Developed*

---

## <u>VERIFIED PETITION FOR RETURN OF CHILD TO JAPAN</u>

**The Convention on the Civil Aspects of International Child removal, done at The Hague on October 25, 1980, and International Child Removal Remedies Act, 22 U.S.C. § 9001 et seq.**

### I.      Preamble

     1.     This petition is brought by Petitioner Carlos Alfredo Martinez, ("Petitioner"), to secure the return of E.M.M., his nineteen (19) month old daughter (the "Child'), who was, without Petitioner's consent or acquiescence, wrongfully removed from Japan to the

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **1** of 26



Attorneys at law
2600 Two Union Square
601 Union Street
Seattle WA 98101-4000
telephone 206 624-1230
Fax 206 340-2563

jurisdiction of this court by Child's mother, Respondent Emily Frances Martinez ("Respondent")

on or about May 22, 2025.

2.         This petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child removal Remedies Act (hereinafter "ICARA") 22 U.S.C. §9001 et seq.  The Convention came into effect in the United States on July 1, 1988 and was also ratified between the United States and Japan on April 1, 2014.  Copies of the Hague Convention and ICARA are annexed hereto as Exhibit A and B, respectively.

3.         The Convention is a treaty between sovereign states, and theretofore entitled to the same weight and deference as the Constitution of the United States.

4.         The objects of the Convention are as follows: (1) to secure the immediate return of Children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.  Convention, art.1.

5.         The Hague Convention applies to cases in which one parent wrongfully removes or retains her or his Child, who is under the age of 16 years, from the Child's "habitual

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986), a copy of which is attached hereto as Exhibit A.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

residence" in breach of the other parent's custodial rights, which were being exercised at the time of the wrongful retention of the Child. Hague Convention, Art. 3.

6.    Petitioner respectfully requests that pursuant to Articles 1(a) and 12 of the Convention, this Court order that the subject Child be returned to Japan, the Child's habitual residence.

## II.    Jurisdiction and Venue

7.    This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction under The Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

8.    Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Child and Respondent are residing in or around the Seattle, Washington area; and because this case involves the removal of a Child under the age of 16 from her habitual residence of Japan in the United States of America.

## III.    Facts

9.    The parties are the parents of the subject Child. Both parties are United States citizens. The Child is a citizen of the United States. Both Respondent and the Child hold visas which make them eligible to reside in Japan indefinitely.

10.    The parties were married on September 15, 2023, in Arapahoe County, Colorado.

11.    E.M.M. was born to the parties November 2023.

VERIFIED PETITION FOR RETURN OF          p. **3** of **26**
THE CHILD TO JAPAN

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

12.    In January 2025, Petitioner, Respondent, and E.M.M. relocated to Japan.

13.    The parties chose to relocate to Japan with E.M.M. for a variety of reasons, including but not limited to, Petitioner's employment.

**a.    Initial Interest in Japan (2022-2024).**

14.    In December 2022, the parties first visited Japan, spending a week in Tokyo before traveling to Okinawa to visit Respondent's brother and his family.

15.    This was Respondent's first opportunity to meet two of her three nieces, E.M.M.'s cousins.

16.    The parties both immediately fell in love with Japan's culture, cleanliness, politeness, and way of life.

17.    By March 2024, the parties' interest in moving to Japan had grown significantly.

18.    As an added bonus to the family relocating to Japan, Respondent would continue to pursue her passion of skiing.

19.    At that time, Respondent was increasingly unhappy with her toxic work environment in Aurora, Colorado.

20.    Respondent enthusiastically supported the parties' international job search and gave Petitioner the "green light" to look for overseas positions, with Japan being the parties' first choice destination and Italy the parties' second.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **4** of **26**

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

21.    Respondent was excited about the prospect of taking a break from employment after her negative work experience in Aurora, CO, focusing on herself and the parties' family's new life in Japan.

22.    On August 14, 2024, both Respondent and Petitioner applied for positions at Misawa Air Base in northern Japan.

23. The parties specifically chose Misawa, Japan because of availability to natural recreational venue, including its proximity to ski resorts for Respondent's benefit and life-long passion for skiing.

24.    The parties regularly engaged in numerous outdoor recreational activities including skiing, hiking, biking, beach activities, and exploring local parks and trails, which formed an integral part of E.M.M.'s child's routine and development in Japan.

25.    Petitioner was interviewed and subsequently received a job offer in September 2024, for a position at Misawa Air Base in Japan.

26.    While Respondent didn't secure immediate employment, this was actually aligned with the parties' family plan.

27.    The parties had agreed that whomever did not get a job first, would have the flexibility to take time for personal development or to find the right opportunity without financial pressure.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

1

**b.      Preparation for Relocation (September-December 2024)**

2

3       28.         The parties began concrete preparations for their move immediately after

4    Petitioner received a job offer September 2024.

5       29.         September 30, 2024, the parties moved out of their rented house in Aurora,

6    Colorado, and temporarily stayed with Respondent's brother, while they made final preparations

7    for the family's relocation to Japan.

8

9       30.         In October 2024, the parties discharged E.M.M.'s at-home Nanny.

10      31.         The parties began the process of preparing the parties' pets for international

11   transport, spending over $1,000 on required vaccinations and blood tests for eventual import to

12   Japan.

13

14      32.         December 2024, Petitioner's new employer hired professional movers to

15   pack and ship the parties' household goods to Japan.

16      33.         The parties spent the holiday season with their families, knowing it would

17   be a significant period before the parties would see them again.

18

19      34.         The parties shipped eight boxes of additional personal belongings ahead of

20   the parties' travel, spending approximately $900 in shipping costs.

21

**c.      Relocation to Japan (January 2025 - Present)**

22

23      35.         On January 6, 2025, the family departed for Japan on one way tickets.

24

25

26

VERIFIED PETITION FOR RETURN OF          p. **6** of 26
THE CHILD TO JAPAN

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

36.       January 2025, E.M.M. was enrolled in swim classes in Japan through May 10, 2025.

37.       Petitioner had already contacted the swim class coordinator about enrollment in the next session beginning June 2025.

38.       One week after arriving in Misawa, the parties had an accident with E.M.M. which required the parties to visit the Emergency Room on base.

39.       This visit established the child's initial healthcare at the military facility.

40.       The parties later selected a healthcare provider in Tokyo due to the superior quality of care, while still maintaining the ability to use the on-base ER if needed.

41.       Petitioner initially received his Letter of Authorization (LOA) from the U.S. Department of Defense in December 2024.

42.       The LOA established the parties' Status of Forces Agreement (SOFA) visa upon arrival in Japan.

43.       These LOAs are typically renewed annually in February or early March, always before the current one expires at the end of March.

44.       The LOA formally documented Respondent and E.M.M. as Petitioner's dependents, including their passport numbers and granted the parties access to military facilities, healthcare services, and other benefits essential for the parties' long-term residency in Japan.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **7** of **26**

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

45.    Upon their arrival in January 2025, a lease was signed for the parties' home in Misawa, Japan.

46.    The parties also completed online driver's courses to obtain their Japanese driver's licenses through the military base, allowing the parties to drive throughout Japan.

47.    Upon their arrival, the parties invested over $7,100 in new furniture and appliances for their new residence in Japan.

48.    The parties purchased two vehicles in Japan for approximately $8,000 total, with one on a payment plan extending one year from purchase.

49.    In February 2025, the parties enrolled E.M.M. in the Misawa Infant Nursery School, a Japanese daycare, where she immediately began making both American and Japanese friends.

50.    E.M.M.'s daycare taught and enforced Japanese customs and courtesies, becoming an integral part of E.M.M.'s cultural integration.

51.    Her caregivers, whom E.M.M. was taught to address as "sensei," called her "E.M.M.-chan" - a term of endearment in Japanese culture and language.

52.    E.M.M.'s caregivers provided comprehensive developmental support, teaching her how to eat and drink from cups without spilling (a significant developmental milestone), how to practice patience, and how to wait in line properly - all important aspects of Japanese social etiquette.

VERIFIED PETITION FOR RETURN OF                    p. **8** of 26
THE CHILD TO JAPAN

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

53.     February 2025, Respondent became a volunteer track & field coach at the local high school, further demonstrating her integration into the community.

54.     Respondent was genuinely excited about this opportunity and fully invested in her role.

55.     Respondent purchased new coaching equipment and used her iPad to help develop training programs for the high school students.

56.     Respondent was particularly interested in working with a pair of younger athletes (freshmen/sophomores), as Respondent explicitly expressed to Petitioner that this meant Respondent could develop them over several years to come while she coached in Japan.

57.     Respondent's long-term mentoring commitment clearly demonstrated her intention to remain in Japan and build lasting relationships within the community, as Respondent was actively planning her involvement with these students' athletic development across multiple future seasons.

58.     From March 29 through April 21, 2025, the parties sat for Respondent's nieces in their home in Japan, further demonstrating the parties' family's integration and their commitment to maintaining family connections despite the international move.

59.     The parties established a PO Box at the USPS on base.

60.     The parties signed contracts for their house internet and mobile service plans, including each obtaining local Japanese cellphone telephone numbers.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **9** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

61.    On April 23, 2025, the parties paid their vehicle tax for the following year, investing $300 total for both vehicles to be legally eligible to drive on Japanese roads for the next 12 months.

62.    In April 2025, the parties spent over $4,000 to have Respondent's brother transport their pets from Colorado to Tokyo, a significant expense the parties would not have undertaken without long-term plans to remain in Japan.

### d.    Family Integration into Japanese Life

63.    E.M.M. quickly adapted to Japanese customs and culture.

64.    E.M.M. began nodding her head as a form of thank you, adopting Japanese etiquette.

65.    E.M.M. learned to remove her shoes when entering or leaving certain establishments.

66.    While accompanied by the parties, E.M.M. demonstrated independence by shopping with her own basket at stores, selecting items, approaching cashiers and putting her basket on the counter for check-out - behaviors aligned with Japanese cultural expectations for Children.

67.    E.M.M. made friends with both American and Japanese Children, and Petitioner and Respondent socialized with her friends' parents on evenings and weekends.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **10** of 26



ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

68.    The parties established regular social routines, including "Taco Tuesday" gatherings with the parties' new circle of friends.

**e.    Healthcare Establishment for E.M.M.**

69.    The parties agreed that Respondent would to take E.M.M. to Tokyo from May 21 to May 23, 2025, for a special trip to Tokyo specifically to enroll E.M.M. in the parties' preferred healthcare provider, the Tokyo Medical and Surgery Clinic.

70.    During this visit, E.M.M. received her 18-month vaccination shots.

71.    The parties deliberately chose this clinic because the parties wanted the best possible care for the parties' daughter during the parties' long-term stay in Japan.

72.    This prestigious clinic features international doctors and maintains an extensive referral network throughout Japan.

73.    Under the parties' overseas insurance plan, the family enjoyed 100% medical coverage, and the parties established this relationship with a healthcare provider in anticipation of their continued residency in Japan.

74.    The trip to Tokyo represented another significant step Respondent took to ensure the parties' family's long-term well-being in Japan.

75.    Unknown to Petitioner, Respondent had chosen to use the Tokyo medical visit as part of her scheme to unilaterally remove E.M.M. for Japan to the United States.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **11** of **26**

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

### f.    Respondent's integration into her new home.

76.    Respondent continued her personal and professional development in Japan.

77.    May 2025, Respondent began attending the University of California, Berkeley School of Information, a fully remote program.

78.    Since Respondent was not working, and E.M.M being in daycare, Petitioner then focused solely on school and other professional development.

79.    Respondent volunteered as a coach at the local high school.

80.    While not under pressure to work immediately, Respondent continued applying for positions at Misawa Air Base as recently as May 17, 2025, demonstrating her intention to build a career in Japan.

81.    Respondent began learning Japanese prior to the parties' move and continued her language studies after arrival.

### g.    Long-term Plans (3-4 Year Horizon and Beyond)

82.    The parties' family's plan was to remain in Misawa for 3-4 years. The Petitioner's employment contract could potentially extend until March 2029 (as indicated by the contract dates on his LOA: 1/17/2024 - 3/31/2026, with annual renewals).  After this period, the parties had discussed two primary options: 1. Remaining in Japan and relocating to Tokyo to allow E.M.M. to continue her Japanese language development and education without disruption to her cultural integration; or 2. Potentially moving to northern Italy (specifically considering Vicenza),

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **12** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

which would offer similar access to ski resorts and outdoor recreational activities that Respondent loves, while providing E.M.M. with the opportunity to learn Italian. This would maintain the parties' international lifestyle while offering European cultural experiences and a strong educational system and the stability Respondent long desired for herself and E.M.M.

83.    In addition to its proximity to ski resorts and other outdoor recreational activities for Respondent, the parties chose to reside in Misawa, Japan because it provided the opportunities for E.M.M. to learn Japanese through daycare, social interactions, and potential tutoring if needed, while Petitioner continued teaching her Spanish and Respondent taught her English.

84.    The parties also chose Misawa, Japan because of its proximity to Respondent's family (nieces) in Okinawa, allowing E.M.M. to develop relationships with her maternal cousins.

85.    The parties also chose to reside in Misawa, Japan, to provide a safe, clean environment with excellent cultural values for raising E.M.M..

86.    All of the parties' actions—from securing long-term housing, enrolling E.M.M. in local daycare, investing in vehicles and furniture, importing the parties' pets at significant expense, obtaining visas, establishing comprehensive healthcare relationships, and Respondent's pursuit of graduate education and community involvement—clearly demonstrate the family's shared intention to establish their lives in Japan for the foreseeable future.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **13** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

87.     As part of their move, they shipped their personal belongings from the United States to Japan.

88.     The parties also sold their furniture in the U.S. or gave away the furniture or other items they could not sell.

89.     At the time of Respondent's unilateral removal from Japan, E.M.M. was fully integrated in Japan and it is her home in every sense of the word.

90.     Petitioner and Respondent clearly were of one mind to relocate their family to Japan.

91.     Petitioner and Respondent clearly were of one mind in deciding to raise E.M.M. in Japan for at least the next 3-4 years.

92.     Before the child's unilateral removal to Washington State by Respondent, E.M.M. had only made brief visits to Washington State and the parties had never resided in Washington state.

93.     Japan was E.M.M.'s habitual residence at the time of her removal to Washington State.

94.     The parties and E.M.M. resided at Y74N 4-77-1688 Komatsugaoka, Rokuhohe town, Kamikitagun, Aomori, Japan from January 2025 until Respondent unilaterally removed E.M.M. to Washington State.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **14** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

95. Petitioner continues to maintain the family household, which contents remains relatively unchanged since E.M.M.'s removal to the United States, including E.M.M.'s clothes, toys, stuff plush animals and educational materials.

96. E.M.M. formed close relationships with friends and family in Japan.

**h.      Respondent's Infidelity and Subsequent Removal Scheme**

97. The parties' relationship broke down May 2025 due to Respondent engaging in an extramarital affair.

98. May 3, 2025, Respondent told Petitioner she wanted a divorce.

99. Not coincidentally, Respondent removed E.M.M. to Washington State, the same state her paramour was going to be stationed in at McChord Air Force Base.

100. May 21, 2025, Respondent took E.M.M. from Misawa to Tokyo ostensibly for a medical appointment for vaccinations and healthcare establishment.

101. On May 19, 2025, as part of her scheme of deception, Respondent sent Petitioner a screenshot of information for her alleged return flight from Tokyo to Misawa.

102. The flight provided by Respondent to Petitioner was set to land in Misawa on Friday, May 23rd, 2025 at 11:45 a.m.

103. Respondent never took that flight, or any other fight back to Misawa.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **15** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

104.    Instead, on or about May 22, 2025, Respondent unilaterally removed E.M.M. from Japan and brought her to the United States without Petitioner's consent and in violation of his custody rights under Japanese law.

105.    On June 4, 2025, Petitioner submitted his Hague Application to the Japanese Central Authority.

106.    On June 18th, 2025 Petitioner was notified that his application was accepted and to be tendered to the US Central Authority.

107.    Respondent failed to communicate with Petitioner since E.M.M.'s removal to Washington State more than 48 days ago.

108.    As of July, 7, 2025, Respondent now allows Petitioner contact with E.M.M for three-fifteen minute Facetime sessions a week because "it is unreasonable to expect [Respondent] to take time out of her life and routine twice a day every day."

109.    As of the filing of this Petition, Respondent is still refusing to advise Petitioner anything about E.M.M., including where she is being held captive, her address, any medical providers, and her general health and well-being.

110.    Also in furtherance of her scheme to deprive Petitioner of his rights of custody pursuant to Japan, E.M.M.'s habitual residence, Respondent also absconded with E.M.M.'s passports and birth certificates.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **16** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

111.     Respondent had denied Petitioner any access to E.M.M., by Facetime or otherwise, including on Father's Day since E.M.M.'s removal to Washington State more than 44 days

112.     In Washington State, "(3) A parent or other person acting under the directions of the parent is guilty of custodial interference in the first degree if the parent or other person intentionally takes, entices, retains, or conceals a child, under the age of eighteen years and for whom no lawful custody order or order making residential provisions for the child has been entered by a court of competent jurisdiction, from the other parent with intent to deprive the other parent from access to the child permanently or for a protracted period. (4) Custodial interference in the first degree is a class C felony." [2]

113.     By reason of the facts herein, Respondent has already knowingly and intentionally committed commit a Class C felony under Title 9A of the Washington State Criminal Code.

114.     On or about July 17, 2025, with the use and assistance, Petitioner located Respondent's residence in Bellingham WA, to wit: 4756 Parker Street, Bellingham WA 98226

115.     Bellingham WA is no more than 23 miles from the Canadian border.

116.     Respondent is able to work remotely.

---

[2]Rev. Code Wash. (ARCW) § 9A.40.060

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN                p. **17** of 26



ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

117.    Respondent is an already proven international flight risk.

118.    Petitioner fears that if given prior notice of these proceedings, Respondent will flee the United States and go into hiding again with E.M.M., this time in Canada.

119.    Petitioner fears this is one of the reasons Respondent chose to reside in Bellingham WA, more than 350 miles from where her parents currently reside.

120.    Petitioner has rights of custody to the Child as fully set forth below, and he had those same rights of custody, which he was exercising on the date Respondent removed E.M.M. to Washington State.

## IV.    Wrongful Removal and Retention of Child by Respondent:  Claim for Relief Under the Hague Convention

121.    A removal or retention of a Child is wrongful under Article 3 of the Hague Convention if:  (a) the removal or retention is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the state in which the Child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those custody rights were actually exercised, or would have been exercised, but for the removal or retention of the Child.. See Hague Convention, Arts. 3 and 5.

122.    The Child's country of "habitual residence," as defined in Article 3 of the Hague Convention is Japan, which is where the Child habitually resided prior to her wrongful removal to the United States beginning on or about May 22, 2025.

VERIFIED PETITION FOR RETURN OF THE CHILD TO JAPAN    p. **18** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

123.     "Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of care-giving parents are relevant considerations."  See *Monasky v. Taglieri*, 589 U.S. 68, 71 (2020).

124.     The Child's habitual residence is Japan and was Japan on the date that Respondent wrongfully removed the Child to Washington State.

125.     From the totality of the circumstances perspective, as of the date of her removal to Washington State, Japan was the Child's ordinary home. See id. at 71 (a Child's habitual residence depends on the totality of the circumstances specific to the case).

126.     The Child has been living in Japan since January 2025, and it has been her home since then.  The Child is fully involved and integrated in all aspects of daily and cultural life in Japan.

127.     Petitioner has rights of custody of the Child within the meaning of Articles 3 and 5 of the Convention.

128.     "Custody rights" under the Hague Convention are defined to include "rights relating to the care of the person of the Child, and in particular, the right to determine the Child's place of residence."  See Hague Convention, Art. 5 (a).

129.     "Custody rights" "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."  See Hague Convention, Art. 3.

VERIFIED PETITION FOR RETURN OF THE CHILD TO JAPAN

p. **19** of **26**

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
FAX 206 340-2563

130.     At the time of Respondent's wrongful removal of the Child from Japan, the Petitioner had and continues to have recognized rights of custody under Japanese law, such that the removal of the Child from Japan is in violation of Japanese law and is a wrongful removal within the meaning of Articles 3 and 5 of the Hague Convention.

131.     "The legal relationship between parents and their child is governed by the child's national law if it is the same as the national law of either the father or mother (in cases where one parent has died or is unknown, the national law of the other parent), or in other cases by the law of the child's habitual residence." [3]

132.     Both parties and E.M.M. are United States citizens.

133.     The United States does not have a uniform national custody law.

134.     Child custody laws are state specific.

135.     "Where a party concerned has nationality in a country where different laws are applied in different regions, their national law is the law designated in accordance with the rules of the country (in the absence of the rules, the law of the region with which the party is most closely connected)." [4]

136.     The parties and E.M.M. were most closely connected to Colorado before relocating to Japan.

---

[3] Japanese Act on General Rules for Application of Laws（Act No. 78 of 2006）Article 32. (https://www.japaneselawtranslation.go.jp/ja/laws/view/3783)
[4] Id. at Article 38 (3).

VERIFIED PETITION FOR RETURN OF          p. 20 of 26
THE CHILD TO JAPAN

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
FAX 206 340-2563

137.    "(1) A person is presumed to be the natural parent of a child if:

(a) The person and the parent who gave birth to the child are or have been married to each other or are in a civil union pursuant to article 15 of title 14, and the child is born during the marriage or civil union, within three hundred days after the marriage or civil union is terminated by death, annulment, declaration of invalidity of marriage or civil union, dissolution of marriage or civil union, or divorce, or after a decree of legal separation is entered by a court; [5]

138.    By reason of the facts herein, Petitioner is presumed to be E.M.M.'s natural father.

139.    "As used in this article, 'parent and child relationship' means the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. 'Parent and child relationship' includes the mother and child relationship and the father and child relationship." [6]

140.    Those rights include rights of custody, as defined by Article 5(a) of the Hague Convention and recognized by Japan, which Petitioner had and was exercising at the time of Respondent's unilateral removal of E.M.M. to the United States. E,g, *Stanley v. Ill.*, 405 U.S. 645, 651 (1972) ". . . the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] to this Court with a momentum for respect . . ."

---

[5]C.R.S. 19-4-105
[6]C.R.S. 19-4-102

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN
p. **21** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

Docusign Envelope ID: DFB0A5EF-1C96-4DFE-8DB2-86A20B8A4C20

141.       Notice is given in this pleading that the Petitioner is relying upon foreign law.  Fed.R.Civ.P. 44.1.

142.       At the time of the Respondent's wrongful removal and retention of the Child, the Petitioner was exercising custody rights within the meaning of Articles 3 and 5 of the Convention, in that he is the father of the Child and has exercised custody rights over the Child since she was born.

143.       E.M.M. was born in 2023 and will be 16 years of age in 2039.  At the time immediately before the wrongful removal of the Child from Japan, the Child habitually resided in Japan within the meaning of Article 3 of the Convention.

144.       Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the Child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with the Child.

145.       Respondent never informed Petitioner about her removal of E.M.M.  to Washington State.

146.       .From his own research, Petitioner learned that Respondent removed E.M.M. to Washington State.

147.       The subject Child is now less than two years old.  The Hague Convention applies to Children under age 16 years of age, and thus applies to this Child.  Petitioner has never

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **22** of **26**

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

consented or acquiesced to Respondent's wrongful removal and retention of the Child in the United States.

148.    Petitioner invokes Article 18 of the Convention, which grants this Court plenary power to order the Child's return at any time.

149.    In accordance with the Article 18 equitable return factors set forth in Justice Alito's concurring opinion on *Lozano v. Montoya Alvarez*, 134 S.Ct. 1224 (2014), the Petitioner requests that this Court exercise its equitable discretion to return the Child to Japan under Article 18, even if the Respondent establishes one of the Convention's five narrow discretionary exceptions to return under the Convention.

150.    The Child has an interest in returning to Japan, her country of habitual residence. Petitioner has an interest in exercising his Japanese rights of custody in Japan.

151.    The governments of Japan and the United States both have an interest in discouraging inequitable conduct and deterring international Child removals.

### V.    Provisional Remedies

152.    Petitioner requests that the Court Issue a Show Cause Order forthwith, ordering the appearance of Respondent before this Court on the first available date on the Court's calendar.

153.    Petitioner further requests that this Court issue a Scheduling Order setting an expedited hearing on the Verified Petition for Return of the Child to Japan.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **23** of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

## VI.    Attorney's Fees and Costs

154.    Petitioner has incurred attorneys' fees and costs resulting from the Respondent's wrongful removal of the Child.

155.    Petitioner respectfully requests that this Court award him all the costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.

156.    Petitioner will submit a copy of all expenditures as soon as practicable and possible, and will amend these costs from time to time, according to proof and in light of further expenditure resulting from Respondent's wrongful removal and retention of the Child.

## VII.    Notice of Hearing

157.    Pursuant to 22 U.S.C. § 9003(c), Respondent will be given notice of any hearing pursuant to Washington and any other applicable law.

## VIII.    Relief Requested

**WHERETOFORE**, it is respectfully requested that the following relief be granted:

a.    Set an expedited hearing on the petition and communicate that hearing date and time to Petitioner so that Petitioner may provide notice of these proceedings and the hearing pursuant to ICARA Section 9003(c);

b.    Issue an order following the hearing, directing that the Child shall be returned to her Habitual Residence of Japan, pursuant to Article 12 of the Convention;

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

c.        Issue an immediate *ex-parte* temporary restraining order prohibiting the removal of the Child from the jurisdiction of this Court pending a hearing on the merits of the Verified Petition, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of this case;

d.        Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Child;

e.        Direct the U.S. Marshall's service or other appropriate federal agency to personally serve Summons and Petition in this matter as well as the requested *ex-parte* Show Cause Order and then and their seize all passports in Respondent's possession, especially and including E.M.M.'s United States passport.

f.        Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the Child's wrongful removal and retention pursuant to 22 U.S.C. §; and

g.        Any such further relief as justice and its cause may require.

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN

p. **25** of **26**

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

Date:. July 22, 2025                    Respectfully submitted,

Lisa A. Sharpe, WSBA No. 21047
206-654-2404; sharpe@lasher.com

Faye E. Washburn. WSBA No. 62967
206-654-2402; fwashburn@lasher.com

Lasher Holzapfel Sperry & Ebberson PLLC
601 Union Street, Suite 2600
Seattle, WA  98101

*ATTORNEYS FOR PETITIONER*
*CARLOS MARTINEZ*

## **CERTIFICATION**

I, Petitioner Carlos Alfredo Martinez, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that I am the Petitioner in the within action and have read the foregoing Petition and know the contents of the foregoing Petition are true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated:  7/22/2025

Signed by:

1449B4A71F3243F...

Petitioner Carlos Alfredo Martinez

VERIFIED PETITION FOR RETURN OF
THE CHILD TO JAPAN                    p. 26 of 26

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

**docusign**

### Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: DFD0A5FF-1C8C-4DFE-8DB2-86A29B8A4C20 | | Status: Completed |
| Subject: Complete with Docusign: 2025-07-22 Verified Petition for Return of Child to Japan-to file today... | | |
| Source Envelope: | | |
| Document Pages: 26 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 0 | Chris Barilla |
| AutoNav: Enabled | | 601 Union St |
| EnvelopeId Stamping: Enabled | | Suite 2600 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Seattle, WA  98101 |
| | | barilla@lasher.com |
| | | IP Address: 38.140.26.170 |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Chris Barilla | Location: DocuSign |
|     7/22/2025 12:50:06 PM |     barilla@lasher.com | |

### Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Carlos Martinez | Signed by: | Sent: 7/22/2025 12:51:14 PM |
| carlos@turtlebox.me | *[signature]* 1449B4A71F3243F... | Viewed: 7/22/2025 12:54:44 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 7/22/2025 12:55:23 PM |
| | Signature Adoption: Drawn on Device | |
| | Using IP Address: 14.9.83.195 | |

**Electronic Record and Signature Disclosure:**
    Accepted: 7/22/2025 12:54:44 PM
    ID: 7fb49767-42b7-4b8d-8342-de2aaa9aed85

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/22/2025 12:51:14 PM |
| Certified Delivered | Security Checked | 7/22/2025 12:54:44 PM |
| Signing Complete | Security Checked | 7/22/2025 12:55:23 PM |
| Completed | Security Checked | 7/22/2025 12:55:23 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

### Electronic Record and Signature Disclosure