UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS ALFREDO MARTINEZ,

Petitioner,

v.

EMILY FRANCES MARTINEZ,

Respondent.

CASE NO. 2:25-cv-01375-TL

TEMPORARY RESTRAINING ORDER

This matter is before the Court on Petitioner's motion for an *ex parte* temporary restraining order ("TRO"). Dkt. No. 7; *see also* Dkt. No. 1 at 25 (petition including request for TRO). Having considered Petitioner's motion and the relevant record, the Court GRANTS IN PART and DENIES IN PART Petitioner's request.

## I. BACKGROUND

Petitioner and Respondent are the parents of E.M.M., a 19-month-old child. Dkt. No. 1 ¶ 9. This petition, filed pursuant to the Hague Convention on the Civil Aspects of International

Child Abduction (the "Convention")[1] and the International Child Abduction Remedies Act ("ICARA") 22 U.S.C. §9001 *et seq.*, arises from Respondent's removal of E.M.M. from her habitual residence in Japan and subsequent retention of the child in Bellingham, Washington, in violation of Petitioner's lawful custody rights. Dkt. No. 1 ¶¶ 122–50.

Petitioner alleges that in January 2025, he and Respondent, who are married, and their daughter E.M.M. relocated to Japan. *Id.* ¶ 12. E.M.M. began daycare, where she learned Japanese customs and courtesies, befriended other students, and quickly adapted to Japanese customs and culture. *See id.* ¶¶ 49–52, 63–68. But in May 2025, the Parties' relationship broke down, and Respondent told Petitioner that she wanted a divorce. *Id.* ¶¶ 97–98.

On May 21, 2025, Respondent took E.M.M. from Misawa, where the Parties lived, to Tokyo, ostensibly for a medical appointment for E.M.M. *Id.* ¶ 100. However, despite providing Petitioner with a screenshot of information about her alleged return flight from Tokyo to Misawa, Respondent removed E.M.M. from Tokyo, Japan, and brought her to the United States on or about May 22, 2025. *Id.* ¶¶ 101, 104. Respondent took with her E.M.M.'s passports and birth certificates. *Id.* ¶ 110.

On June 4, 2025, Petitioner submitted his Hague Application to the Japanese Central Authority. *Id.* ¶ 105. On June 18, 2025, Petitioner was notified that his application was accepted and would be tendered to the U.S. Central Authority. *Id.* ¶ 106.

Between her departure from Japan and July 7, 2025, Respondent failed to communicate with Petitioner. *See id.* ¶¶ 107–08. Respondent now allows Petitioner contact with E.M.M. through three fifteen-minute video calls per week, though she has not provided Petitioner with

[1] Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (effective July 1, 1988).

any additional information about E.M.M., including her address, medical providers, or general health and well-being. *Id.* ¶¶ 108–09.

On or about July 17, 2025, Petitioner located Respondent's residence in Bellingham, Washington. *Id.* ¶ 114.

## II. Legal Standard

A TRO, like any preliminary injunctive relief, is an extraordinary remedy that is "never awarded as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting the analysis for a TRO and a preliminary injunction are substantially identical), *overruled on other grounds by Winter*, 555 U.S. 7. "TROs serve a limited purpose: 'preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.'" *Rodriguez v. Bostock*, No. C25-5240, 2025 WL 1655483, at *3 (W.D. Wash. May 19, 2025) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (9174)).

A party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of the preliminary relief; (3) that a balancing of equities tips in favor of the injunction; and (4) that the injunction is in the public interest. *Winter*, 555 U.S. at 20. While all four *Winter* elements must be satisfied, the Ninth Circuit permits a "sliding scale" approach as to the first and third factors: "[W]hen the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits,'" rather than showing a likelihood of success on the merits. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011))); *Cottrell*, 632 F.3d at 1134–35 (holding that, after *Winter*, the "serious question" sliding scale survives in the Ninth Circuit, provided that the other two

elements are also shown); *see also Winter*, 555 U.S. at 20–22 (rejecting an approach that permitted mere "possibility" of irreparable harm if there is a strong likelihood of success on the merits).

## III. Discussion

### A. Temporary Restraining Order

Petitioner has established each of the four prongs necessary for a TRO to issue.

#### 1. Likelihood of Success on the Merits

The Convention is a multilateral international treaty on parental kidnapping to which the United States and Japan are signatories.[2] For children under the age of 16—like E.M.M.—the Convention aims "a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, art. 1; *see also* Convention, art. 4 ("The Convention shall cease to apply when the child attains the age of 16 years."); *Harvey v. Means*, No. C23-1712, 2024 WL 324980, at *3 (W.D. Wash. Jan. 29, 2024) (granting petition), *aff'd*, No. 24-609, 2025 WL 1189565 (9th Cir. Apr. 24, 2025).

"A child is 'wrongfully removed' where removal occurs 'in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention' and 'at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.'" *Harvey v. Means*, No. C23-1712, 2023 WL 8019440, at *2 (W.D. Wash. Nov. 20, 2023) (quoting Convention, art. 3).

[2] The United States implemented the Convention through the enactment of ICARA, which vests federal district courts with concurrent jurisdiction over claims arising under the Convention and the authority to order the return of wrongfully removed or retained children to their country of habitual residence. 22 U.S.C. §§ 9001–11.

"A court applying this provision must therefore answer four questions: (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?" *Id.* (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001), *abrogated on other grounds by Monasky v. Taglieri*, 589 U.S. 68 (2020)).

Here, E.M.M. is under 16 years old. Dkt. No. 1 ¶ 11 (asserting E.M.M. was born in November 2023). The removal took place on or about May 22, 2025. *Id.* ¶ 104. Prior to the removal, E.M.M. habitually resided in Japan. *Id.* ¶ 143; *see also id.* ¶¶ 35–74. At the time of E.M.M.'s removal from Japan, Petitioner had—and continues to have—recognized rights of custody under Japanese law. *Id.* ¶ 130. Finally, Petitioner appears to have continuously exercised his custody rights, including at the time of the removal. *See id.* ¶ 142.

Therefore, Petitioner has shown a likelihood of success on the merits.

**2. Immediate Harm**

"There can be little doubt that a child's wrongful removal, depriving a parent and the child of the parent-child relationship, would have an immediate and harmful effect on the child, and the continued wrongful retention of the child would continue to harm both the parent and the child." *Gabriel v. Lavison*, No. C22-6, 2022 WL 566601, at *1 (W.D. Wash. Jan. 14, 2022). That such continuing harm may require preliminary relief has been recognized by Congress, which authorized courts to "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a); *see also Gabriel*, 2022 WL 566601, at *1.

In his verified petition, Petitioner has alleged immediate and irreparable harm arising from Respondent's removal of their 19-month-old daughter, E.M.M., from her habitual residence in Japan, and Respondent's subsequent retention of the child in Bellingham, Washington, in violation of his lawful custody rights. Dkt. No. 1 ¶¶ 122–50. Petitioner had to locate Respondent's residence. *Id.* ¶ 114. In addition, Petitioner has set forth facts in his verified petition showing that there is some risk that Respondent will flee the jurisdiction with E.M.M. *Id.* ¶¶ 115–19.

Therefore, there is a likelihood of irreparable harm in the absence of preliminary relief.

**3. Balancing of Equities**

The risk of Respondent secreting E.M.M. away to Canada or elsewhere before the resolution of Petitioner's claim's merits outweighs any injury to Respondent or to E.M.M. that may result from ordering the child to stay in this jurisdiction. *See Vonnahme v. Lugo*, No. C22-707, 2022 WL 1444645, at *4 (D. Nev. May 5, 2022). A TRO at this stage merely maintains the status quo as it existed before this action was filed. *See Rodriguez*, 2025 WL 1655483, at *4 (quoting *Granny Goose Foods, Inc.*, 415 U.S. at 439).

Therefore, the balance of equities tips in favor of granting a TRO.

**4. Public Interest**

The public interest also favors injunctive relief. "The public-interest analysis for the issuance of a TRO requires courts to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Vonnahme*, 2022 WL 1444645, at *4 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011)). The Convention's purpose is to prevent one parent from wrongfully and unilaterally removing or retaining their child in another country at the expense of the other parent's custody rights. *Id.* And as the Court has already discussed, *supra* Section III.A.2, in actions arising under the

Convention, Congress has specifically authorized courts to "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition," including by ordering injunctive relief. 22 U.S.C. § 9004(a); *see also Gabriel*, 2022 WL 566601, at *1.

Therefore, the public interest favors granting a TRO.

**B. Issuance *Ex Parte***

Where a party requests a temporary restraining order ("TRO") *ex parte*—"without written or oral notice to the adverse party or its attorney"—the Court may grant the TRO only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Further, Local Civil Rule 65 provides:

> Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted. Unless the requirements of Fed. R. Civ. P. 65(b) for issuance without notice are satisfied, the moving party must serve all motion papers on the opposing party, by electronic means if available, before or contemporaneously with the filing of the motion and include a certificate of service with the motion. The motion must also include contact information for the opposing party's counsel or for an unrepresented party.

LCR 65(b)(1).

Here, because of the substantial risk that Respondent may flee this jurisdiction with E.M.M., the Court finds it necessary to grant Petitioner's motion without notice to Respondent. Petitioner has alleged specific facts in his verified petition that show immediate and irreparable injury that will result to him before Respondent can be heard in opposition, as well as the reasons

that notice should not be required. Specifically, Petitioner alleges that Respondent chose to reside in Bellingham, Washington—less than 23 miles from the Canadian border, and where she has no connections—instead of closer to her family, who reside approximately 350 miles away from Bellingham, to facilitate the ability to flee to Canada with E.M.M. *See* Dkt. No. 1 ¶¶ 114–19.

Therefore, the Court finds it appropriate to issue the instant TRO *ex parte*.

### C. Marshal Service

"Courts deciding petitions under the Hague Convention have the authority to order the United States Marshal to serve a respondent and seize travel documents." *Sankaranarayanan v. Sashidhar*, No. C24-1745, 2024 WL 5315293, at *1 (W.D. Wash. Nov. 15, 2024) (citing *Rosas v. Saavedra*, No. C23-1549, 2023 WL 7001641, at *1 (W.D. Wash. Oct. 24, 2023) (directing the U.S. Marshal to seize all passports and travel documents for respondent and child)); *see also Alvarez v. Marin*, No. C24-1992, 2025 WL 1091940, at *3–4 (C.D. Cal. Mar. 14, 2025) (directing U.S. Marshals to serve respondent and assist in transfer of physical custody of child); *In re Lozano*, 809 F. Supp. 2d 197, 202 (S.D.N.Y. 2011) (noting that the court previously directed the U.S. Marshal to serve respondent and seize all passports and travel documents for respondent and child).

## IV. CONCLUSION

Having reviewed the verified petition and the remainder of the record, the Court GRANTS IN PART and DENIES IN PART Petitioner's motion. It is hereby ORDERED:

(1) The Court GRANTS Petitioner's request that an immediate *ex parte* temporary restraining order prohibiting the removal of E.M.M. from the jurisdiction of this Court pending a hearing on the merits of the request for a temporary restraining order. Respondent Emily Frances Martinez IS PROHIBITED from removing E.M.M.

or directly or indirectly allowing E.M.M. to be removed from the Western District of Washington until further order of the Court. This restriction SHALL automatically expire at midnight on August 7, 2025, unless specifically extended by further order of the Court.

(2) Respondent SHALL surrender any and all of her passports and travel documents as well as any and all of the passports and travel documents of E.M.M to the United States Marshal.

(3) The United States Marshal SHALL (i) serve Respondent, Emily Francis Martinez, with a copy of this Order, the Petition for Return of Child (Dkt. No. 1) and all attachments, and the Summons (Dkt. No. 6) within three (3) business days of the date of this Order, and (ii) seize all passports and travel documents for Respondent and the child, E.M.M.

(4) This Order gives the United States Marshal, and any peace officer assisting him within the State of Washington, the authority to enter and search the premises of Respondent, Emily Francis Martinez, at 4756 Parker Street, Bellingham WA 98226 for the purpose of securing any and all passports of Respondent as well as E.M.M. The United States Marshal SHALL turn the passports and any other travel documents over to the Clerk of Court as soon as practicable.

(5) The United States Marshal is authorized to use reasonable force to execute this order.

(6) Any person interfering with the lawful execution of this order is subject to criminal contempt of court.

(7) The Court DENIES the request for all costs and fees incurred to date, with leave to refile the request at the conclusion of these proceedings, if appropriate.

(8) Any opposition to the request for a temporary restraining order SHALL be filed by no later than August 4, 2025, at 5:00 p.m. PST; and any reply SHALL be filed by August 5, 2025, at 12:00 p.m. PST.

(9) Petitioner and Respondent SHALL appear before the court for a hearing on the request for a temporary restraining order (and whether it should be converted to a preliminary injunction) and a status conference on August 7, 2025, at 4:00 p.m. PST, at the United States Courthouse, 700 Stewart Street, Seattle, Washington, in Courtroom 14B.

Dated this 24th day of July 2025.

Tana Lin
United States District Judge