IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARLOS ALFREDO MARTINEZ<br><br>                    Petitioner,<br><br>vs.<br><br>EMILY MARTINEZ,<br><br>                    Respondent. | Case No. 2:25-cv-01375-TL<br><br>DECLARATION OF EMILY MARTINEZ |

I, EMILY MARTINEZ, hereby declare under penalty of perjury under the laws of the State of Washington, that the following is true and correct to the best of my knowledge:

1.  I am over the age of eighteen years, am competent to testify as a witness herein, and make this declaration based upon my personal knowledge.

2.  I filed a Petition for Divorce (Dissolution) (PTDSS) in Walla Walla County, in the Superior Court of Washington, on June 2, 2025, case number 25-3-00098-36.

3.  Petitioner has not been served with this Petition yet.

4.  Petitioner and I have been married since September 15, 2023.

5.  Petitioner and I are the parents of E.M.M., our 19-month-old daughter.

DECLARATION OF EMILY
MARTINEZ – PAGE 1

ENRIGHT LAW APC
14205 SE 36TH STREET STE.100
BELLEVUE WA 98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

6. Petitioner and I lived in Colorado from the time we were married until November 2024.

7. When Petitioner and I left Colorado, we became permanent residents of Washington, residing at 315 SE Valley Drive, College Place, WA 99324, located in Walla Walla County, Washington.

8. This is my parents' address.

9. Our marriage has always been slightly rocky and on the verge of failing. However, even since moving to Japan in January, the marriage has been severely falling.

10. The marriage took a turn for the worse in April 2025 when my nieces visited us.

11. Prior to Japan, the marriage began with the Petitioner being unfaithful and involved with other women.

12. Shortly after marriage and having E.M.M., I began noticing some angry characteristics that would come in the form of yelling, slamming, and went as far as to yell into the baby's face.

13. As early as 3 months old, Petitioner could not handle the crying during a late-night cry session and screamed "NO" in the face of E.M.M.

14. Like many women who suffer abuse in silence, I remained to prevent any potential abuse to E.M.M. Leaving meant allowing Petitioner extended, unsupervised access to E.M.M. at an age that she would not be able to relay any abuse she might endure, whether physical or emotional.

15. The only unsupervised time that I left E.M.M. with Petitioner was short periods before leaving Japan to seek support and find sources to help me out of the abusive situation in Japan.

DECLARATION OF EMILY MARTINEZ – PAGE 1

ENRIGHT LAW APC
14205 SE 36TH STREET STE.100
BELLEVUE WA 98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

16. This short time leaving Petitioner unsupervised with E.M.M. created even more fear that I did not have an option but to allow him to see E.M.M., and that if I were not present or could not be present soon, Petitioner's anger could be sparked at any time and harm E.M.M.

17. These actions by Petitioner would cause me to retract and feel as if I had to obey and deal with the anger, out of fear of Petitioner's retaliation.

18. I brought these concerns to the Petitioner on more than one occasion, but they were never taken seriously, or the behavior would decrease for short periods, then come back to the surface.

19. Petitioner works for General Dynamic Information as a government contractor, at Misawa Air Force Base in Japan.

20. When Petitioner was offered a contract position in Japan, Petitioner and I agreed we would attempt to go as a family with the hope of mending a failing marriage.

21. This initial employment came to me as a secret, and when relayed to me by the Petitioner, I was forced to lose out on a job opportunity to not upset the Petitioner.

22. Nonetheless, I obliged in an effort to keep the peace and remain a family, so I can continue being E.M.M.'s protection.

23. The purpose of the change in residency to Washington was with the intent of returning to Washington after Japan.

24. Petitioner's contract is only for one year, from January 2025 to January 2026. Petitioner and I had no intention of returning to Colorado, which is why we obtained permanent residency in Washington before leaving for Japan in January 2025.

DECLARATION OF EMILY
MARTINEZ – PAGE 1

**E N R I G H T   L A W   A P C**
14205 SE 36TH STREET STE.100
BELLEVUE WA 98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

25. I have been and remain the primary caretaker of E.M.M. I have been the sole caretaker for night feedings, nursing, medical appointments, transportation for childcare, and overall her place of comfort.

26. Due to my dependable role as E.M.M.'s place of comfort, if E.M.M. is hurt or needs to eat or go to sleep, E.M.M. will come directly to me at every opportunity.

27. The discomfort projected by Petitioner is visibly present in E.M.M. by her visible lack of discomfort and inability to be settled when with Petitioner.

28. Petitioners' behavior became increasingly more toxic and volatile in April 2025, when my nieces visited. I attempted to address this behavior and its effects it had on me and our familial environment, but to no avail.

29. This behavior escalated to the Petitioner's yelling, throwing items such as pens, and slamming objects.

30. On or around May 2025, Petitioner berated me in front of our group of friends at a gathering in their home. This behavior was so toxic and unpredictable, I would visibly shake in response to Petitioner's actions.

31. It was not until early May 2025 that Petitioner spent more than 12 hours of independent caretaking of E.M.M. This is mostly due to the Petitioner's history of inability to console E.M.M. in emotional times or times of discomfort, particularly at night.

32. I have been solely relied on to provide such care and comfort.

33. As this behavior continued, it became discoverable by others. Other local friends/acquaintances in Japan began to notice, including the Chaplain and his wife.

34. Petitioner lived off base in Japan.

DECLARATION OF EMILY
MARTINEZ – PAGE 1

**E N R I G H T   L A W   A P C**
14205 SE 36TH STREET STE.100
BELLEVUE WA 98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

35. I sought guidance from the Chaplain and other base resources, but they were limited to service members as a priority. I made all attempts to remedy my fears of creating change in the environment E.M.M, and I was in. I made a report to the Family Advocacy Program ("FAP") on base. See attached **Exhibit A**, FAP Report.

36. In the report, the Central Registry Board for the 35th Fighter Wing, Department of the Air Force, reviewed the same details I am providing to this court and determined that the facts of my emotional abuse meet the criteria for adult emotional maltreatment pursuant to DoDM 6400.01. See attached **Exhibit A**, FAP report.

37. Just before leaving Japan, Petitioner overheard the tail-end of a conversation of mine on the phone about something to the nature of being walked to my car by a man. I noticed an immediate reaction from the Petitioner.

38. I believe the filing of this request is simply to force me back to Japan, in a place Petitioner knows I have no access to help, in an effort to control me.

39. As a dependent of a government contractor living in Misawa, Japan, I had limited access to any resources other than the Family Advocacy Program.

40. As soon as this program was discovered, I reported the abuse and the emotional maltreatment. Base legal is limited to legal personnel, and dependents of government contractors are the very last to receive their resources.

41. If E.M.M. and I were dependent on active-duty service members, we would be separated until the military could assist in a safe return to the States. This was not an option for us due to our relation to the base and foreign country; therefore, this was not a source of assistance.

42. To not inundate the Court with the entire U.S. Air Force Legal Services website, I offer the brief explanation that base legal does not determine contested child custody and visitation

DECLARATION OF EMILY
MARTINEZ – PAGE 1

ENRIGHT LAW APC
14205 SE 36TH STREET STE.100
BELLEVUE WA 98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

orders for divorcing parties. Base legal can only assist in facilitating the separation of families, returning dependents home, and providing document guidance for non-contested issues. See Appendix A, attached to Response to Petitioner's Motion for Temporary Restraining Order.

43. None of this applies to me other than that if base legal was an option at any point, I would have had to remain with my abuser until a return was arranged to the United States.

44. This could have taken an undetermined amount of time. Waiting to see if base legal was an option down the road would further place me and E.M.M. in an impossible position to remain with our abuser while safely caring for E.M.M. in an abusive, unpredictable home.

45. I attempted to seek remedies before escaping. In doing so, I knew I did not fall under UCCJEA Jurisdiction for Japan, as I am not a resident nor had I or E.M.M. resided in Japan for 6 months. This information is provided on the U.S. Embassy & Consulates government website resources for "Divorce in Japan.". See Appendix B attached to Response to Petitioner's Motion for Temporary Restraining Order.

46. When considering a fallback on UCCJEA jurisdiction, I knew that Petitioner and I had permanent residency in Washington, as that is where they intended to return and their habitual residence.

47. Although I have not lived in Washington since January 2025, the residence before that was Colorado, of which there are no habitual connections, and now no longer falls under that UCCJEA jurisdiction.

48. I went to the place that Petitioner knew I would go to be safe and was considered a familial safe space for all parties involved.

DECLARATION OF EMILY
MARTINEZ – PAGE 1

ENRIGHT LAW APC
14205 SE 36TH STREET STE.100
BELLEVUE WA 98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

49. My intent was simply to escape to a safe space where I knew I could provide the comfort and stability without fear of Petitioner's retaliation. I knew the marriage was abusive and was taking the steps to safely end the marriage, while caring for E.M.M. and myself.

50. Enacting these proper steps to safety would not have been possible in Japan, as I had no access to resources, legal, mental, financial, or otherwise.

51. The alternative option was to remain in Japan, where I had no rights and no jurisdiction, in a situation she knew to be unsafe, or escape.

52. I was worried about E.M.M.'s safety, as I am reporting now and did report to FAP, escaping was the only option. Leaving EM.M. behind would be neglectful and harmful to E.M.M., as I am her primary caretaker and source of comfort.

53. A TRO is not warranted in this action.

54. I recognized behaviors that were not healthy or safe and attempted to address them on more than one occasion. Petitioner made no improvements or attempts to seek help for the safety and well-being of E.M.M. or me.

55. I was isolated and without a support system when in fear.

56. I did not book a flight and pretended it was a doctor's appointment.

57. This event occurred, but instead of returning to Misawa, I left as I felt it was my only opportunity to escape without harm to myself or to E.M.M., given the recent reactions and behavior of Petitioner.

58. I knew I would be safe and could continue to provide E.M.M. with the health and safety she deserved by returning to her permanent place of residency, Washington.

59. Here, I have a support system to offer E.M.M. a healthy environment.

DECLARATION OF EMILY
MARTINEZ – PAGE 1

ENRIGHT LAW APC
14205 SE 36TH STREET STE.100
BELLEVUE WA 98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

1  EXECUTED AT College Place, Washington, this 4th day of August 2025.

*Martinez, Emily*
_____
EMILY MARTINEZ, Respondent

DECLARATION OF EMILY
MARTINEZ – PAGE 1

**ENRIGHT LAW APC**
14205 SE 36TH STREET STE.100
BELLEVUE WA  98005
(425) 436-5777

Doc ID: 42efa196f92c531340183808aee81637c4021aad

# EXHIBIT A

Doc ID: 42efa196f92c531340183808aee81637c4021aad



**CUI**

# DEPARTMENT OF THE AIR FORCE
HEADQUARTERS 35TH FIGHTER WING (PACAF)
MISAWA AIR BASE, JAPAN

MEMORANDUM FOR  35 FWSA/CC
                 Carlos Martinez



25 June 2025

FROM: 35 FW/CV

SUBJECT: Central Registry Board (CRB) Incident Determination

*<u>Disciplinary or administrative action may not be taken based solely on the Incident Status Determination IAW DoDM 6400.01, Vol 3.</u>* The purpose of an Incident Decision Committee [IDC] Central Registry Board [CRB] is to decide which reports for suspected child abuse or domestic abuse meet the DoD definition of abuse (DODM 6400.01, Vol 3). An IDC/CRB meeting is not a disciplinary proceeding and the requirements for due process for UCMJ disciplinary proceedings are inapplicable to IDC/CRB meetings and actions (Chapter 47 of Title 10, UCMJ).

1. The CRB met on 25 June 2025 to review incident 20250027 involving Carlos Martinez. The allegation was adult emotional maltreatment of Emily Martinez by Carlos Martinez. The board determined the incident **deferred/met/did not meet** the criteria set forth in DoDM 6400.01, Volume 3, for emotional maltreatment. Only met criteria incidents will be reported to the DoD Central Registry database.

2. IAW DAFI 40-301, if the alleged offender or victim disagrees with the determination, either may request an Incident Status Determination Review (ISDR). The request must be submitted in writing to the Family Advocacy Office within 30 days of notification of the CRB determination. The Family Advocacy Office will present the ISDR request to the CRB Chairperson. An ISDR may be granted when there is new information that was not presented to the CRB, and that information could affect the outcome determination. An ISDR may also be granted if the committee failed to comply with the CRB's published directives and standards. A signed and dated copy of this letter must be attached to the request.

3. The CRB findings are to be shared between you and Martinez. This letter serves as verification of the date of notification. Both of you must sign and date this letter and provide a copy to Martinez as a record of the CRB determination date. Questions may be addressed to the Family Advocacy Office at (DSN) 226-2123 or (COMM) 315-226-2123.

MATTHEW R. KENKEL, Colonel, USAF
Deputy Commander, 35th Fighter Wing

~~Commander~~ Signature/Date Signed
First Sergeant

Sponsor Signature/Date Signed

a. The information herein is Controlled Unclassified Information (CUI) which must be protected under the Freedom of Information Act (Title 5 United States Code Section 552) and/or the Privacy Act of 1974. Unauthorized disclosure or misuse of this PERSONAL INFORMATION may result in disciplinary action, criminal and/or civil penalties.

**CUI**



Audit trail

| | |
|---|---|
| Title | Enright Law has sent you a document to review and sign -... |
| File name | M_Dec of E. Marti...NED_08.04.25..pdf |
| Document ID | 42efa196f92c531340183808aee81637c4021aad |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

This document was requested on app.practicepanther.com and signed on app.practicepanther.com

## Document History

**SENT**  
**08 / 05 / 2025**  
00:51:48 UTC  
Sent for signature to Martinez, Emily (emilyfdavis4210@gmail.com) from acj@enrightlawapc.com  
IP: 71.236.170.79

**VIEWED**  
**08 / 05 / 2025**  
00:56:25 UTC  
Viewed by Martinez, Emily (emilyfdavis4210@gmail.com)  
IP: 24.19.182.254

**SIGNED**  
**08 / 05 / 2025**  
00:59:42 UTC  
Signed by Martinez, Emily (emilyfdavis4210@gmail.com)  
IP: 24.19.182.254

**COMPLETED**  
**08 / 05 / 2025**  
00:59:42 UTC  
The document has been completed.

Powered by Dropbox Sign